(Judge Fillius of the seventh circuit sitting by designation in place of Judge Marvin.)

STATE EX REL. SCOBIE V. EDSON A. CASS ET AL.

1. PLANS OF COURTHOUSE BUILDING COMMISSION ARE A PROCEEDING WITHIN MEANING OF GEN. CODE 26.

A courthouse building commission having been appointed and the building partially completed pursuant to act 98 O. L. 53 (Gen. Code 2333-2338), the plans made for its completion is a proceeding within the meaning of Gen. Code 26 and are not affected by a repeal or amendment of the statute under which such plans were made. Hence the words "shall be governed by the provisions of this chapter relating to the erection of public buildings in the county" in Gen. Code 2338, being added in codification does restrict the powers of the "commission" under the original act.

2. STATUTES REQUIRING COMPETITIVE BIDDING DO NOT APPLY TO NON-COMPETITIVE ARTISTIC WORK.

If the contemplated interior decorations of a new courthouse are of such an artistic nature that they are noncompetitive, the statutes requiring contracts for public work to be let at competitive bidding do not apply.

3. EXPENDITURE OF MONEY BY CONTRACTOR ON ILLEGAL PUBLIC CONTRACT DOES NOT ESTOP TAXPAYER'S INJUNCTION.

If a contract to do certain work for a county is illegal, the fact that the contractor has expended a large sum of money in the partial execution of the agreement does not estop a taxpayer from enjoining the further execution of the contract, or the payment thereon of the public funds.

4. TAXPAYER ENJOINING CONTRACT PROMPTLY ON PROSECUTOR'S REFUSAL, NOT GUILTY OF LACHES.

A taxpayer of a county, immediately upon refusal of the prosecuting attorney to do so, instituting suit to enjoin illegal expenditure of public money, pursuant to Gen. Code 2922, having within a few days of the execution of the contract complained of served notice upon the prosecuting attorney to bring such suit as provided by Gen. Code 2921, is not guilty of laches.

APPEAL from common pleas court.

*Smart, Marvin & Ford*, for plaintiff.

State v. Cass.

*J. A. Cline,* Pros. Atty., *W. D. Meals,* Asst. Pros. Atty., *Hoyt, Dustin & Kelley,* for defendants.

## FILLIUS, J.

This case comes into this court on appeal from a judgment rendered in favor of the plaintiff by the court of common pleas of this county.

The plaintiff, a taxpayer of the county, brings this suit to enjoin the defendants, constituting the building commission of Cuyahoga county, and as well the auditor and treasurer respectively of the county, and William F. Behrens, from decorating the courthouse as proposed by a contract made with Behrens, alleging that the building commission is constructing a courthouse in Cuyahoga county and that it has entire charge thereof by virtue of authority vested in it by law, including the painting and decorating of the interior thereof and the letting of the contract therefor; that the commission has entered into a contract with the defendant, Behrens, for doing the painting and decorating for the agreed sum of $90,000; that the contract is illegal and without authority of law, because the commission did not cause full and accurate plans of the painting thus contracted for to be made, nor did it submit the work for such painting to competitive bidding, but wholly failed to give notice thereof by advertising, as required by law, for the lowest and best bid therefor, and that no invitation whatever for bids for said work was given by the commission; that the contract was made with Behrens without giving anybody an opportunity to examine plans and specifications therefor to bid on the work; that the auditor of said county will issue vouchers to the treasurer of the county for the work to be done under said contract, and that the treasurer will pay such vouchers, and that the defendant, Behrens, is about to proceed to carry out said contract, and he prays that the defendants, and each of them, be restrained and enjoined from carrying out or completing the contract for said painting.

To this petition the defendants, composing the building commission, and the auditor and treasurer of Cuyahoga county,

jointly answer, admitting that the building commission is engaged in the construction of the courthouse and that it has entire charge of the construction thereof and the right to determine all questions connected therewith, including the interior painting thereof. They admit the execution of the contract with the defendant, Behrens, to paint and decorate the interior of the courthouse in accordance with plans and specifications adopted by the commission, which work is to be done to the satisfaction of the commission and its architect, and that by the terms of the contract the commission agrees to pay Behrens $90,000 therefor; that the work to be done and the services to be rendered by Behrens, under said contract, are of a personal character, involving and requiring an extensive knowledge of decorative art, including the mixing, blending and harmonizing of colors, and they admit that if not restrained the commission will go forward in the execution of this contract, and they deny that the contract is illegal.

The defendant, Behrens, files a separate answer, and after admitting the principal averments of the petition, he in effect denies that there is any illegality in the execution of the contract, and denies that the commission was wanting in power to make the same. He further alleges that the nature and character of the work is such as to demand a high order of artistic skill and taste to paint and decorate the walls of the courthouse, as required by the terms of his contract, and that the services required of him are in their nature of that personal, skillful and artistic quality as to make them noncompetitive in character.

Thus are the issues presented.

The facts, as established by the testimony offered upon the trial of the case, are substantially as follows:

The defendants, Fischer, Eirick and Vail, the county commissioners of this county, together with the defendants, Cass, Higley, Osborn and Smith, appointed by the court of common pleas to act with said board of county commissioners, constitute a building commission, pursuant to an act of the legislature passed in 1904, to build the courthouse. Pursuant to the

statute authorizing its creation, the commission employed architects, superintendents and others; procured plans, drawings and specifications; invited bids thereon for the construction of the courthouse, and entered actively upon the work of constructing the courthouse. For reasons apparently satisfactory to the commission, but not appearing in this record, in the original letting of contracts for the construction of the courthouse, bids were not invited, nor contracts made, for painting and decorating the interior walls and ceilings thereof. The building itself about the time of the execution of the contract complained of was substantially completed. The only work left to be done was the completion of some parts of the interior finish of the building and the painting and decoration of the walls, and the supplying of the mural paintings intended for various rooms in the building.

The building, to cost upwards of two and a half million dollars, is of magnificent proportions, and artistic design and finish. Built of granite, of the style of the Italian Renaissance, located upon the bluff adjacent to the shore of the lake, it is designed not alone to be an appropriate place for the administration of justice, but a monument to the genius and modern artistic development of the city and county which it adorns, and as well to be one of a group of buildings in process of erection and to be erected in the city of Cleveland and county of Cuyahoga, so placed and constructed about a mall that each shall be in harmony with the others, and together constitute an expression of the highest development of the art of architecture and civic usefulness in this country.

The commission proceeding to complete this structure, thus conceived and designed, employed Charles F. Schweinfurth, a gentleman of this city, eminent as an architect and as a man possessing a fine artistic sense, not only in the designing of buildings but in their interior decoration, to prepare plans and specifications for its interior decoration, in keeping in design and artistic finish with the building itself. Without attempting to go into detail, the plans and specifications, thus prepared, required the interior decoration to be like the building itself of

the period of the Italian Renaissance, particularly giving expression to the peculiar quality, style and effect of that period, which found its highest development in one of the greatest artists of that period. The commission adopted the views, plans and specifications of Mr. Schweinfurth, and in addition, determined to place upon the interior walls of the building a number of mural paintings to be executed by one or more of the present day masters of mural art, and it was required that the decorating to be done by Mr. Behrens, under his contract, should be in harmony with these mural paintings, so that the whole should have one harmonious, artistic effect, suggestive of the majesty and dignity of the law and its administration. To do the interior decorating thus determined upon and in this manner, the commission found that it would require a highly developed professional and artistic skill, involving taste, feeling, harmony, idealism and an aesthetic sense that in fact made the work noncompetitive in character. The commission, therefore, did not advertise for bids for the doing of this work, but did make inquiry as to prices therefor, through its representative, Mr. Schweinfurth. Accordingly, acting upon the belief that it had the power to enter into a contract of this character without submitting the work to competitive bidding, it entered into the contract in question with Mr. Behrens to do the work and furnish the material therefor, upon plans and specifications, as definite as the nature of the work would permit, though leaving much ultimately to the judgment of Mr. Schweinfurth.

The question therefore now for determination is, did the commission in thus making this contract exceed the authority conferred upon it by the statute creating it, and any amendment thereof?

Before undertaking to answer this question, it will be well to dispose of two defenses interposed upon the trial: First, that the plaintiff has been guilty of such laches that a court of equity ought not to interfere in his behalf; and, second, that he is estopped to claim the interposition of this court by reason of the fact that he delayed bringing his action so long that the defendant Behrens has, in good faith, and relying upon the

State v. Cass.

legality of his contract, made expenditures and incurred obligations on account thereof, amounting to a very large sum of money, to wit, more than $10,000.

So far as the question of laches is concerned, it is difficult to see how the plaintiff could reasonably have been more diligent. While it is true the newspapers of the city about August 3, published the fact that the commission had substantially contracted with Mr. Behrens to do this work, yet the contract itself and the bond to be executed concurrent with it, were not executed until September 14, and upon that date, or within a day or two thereafter, the plaintiff made application to counsel and counsel immediately served notice upon the prosecuting attorney of the county to bring this action, and he, after the lapse of two or three days, refused to do so, and the very day that his refusal was communicated to plaintiff's counsel, this suit was begun. It would appear, therefore, that the plaintiff was not guilty of laches. The court would hardly be warranted, in a suit begun on behalf of the taxpayers of the county, to protect their interests against the illegal expenditure of public funds, in finding that the plaintiff was guilty of laches, unless such clearly appeared to be the case.

Neither is the plaintiff estopped to prosecute this action. He claims that the defendants should be enjoined from carrying out this contract because it is illegal, because the defendants are utterly without authority to execute it, or having executed it, to carry it out. If the contract be in fact illegal and without authority of law, then the plaintiff is not estopped, no matter how much money the defendants or any of them may have expended in its partial execution, from enjoining the further execution of the contract, or the payment thereon of any of the public funds.

Whether, then, the commission had authority to execute the contract in question, depends upon what effect is to be given to the statute and any amendment thereof, under which the commission is acting. This statute is general in its nature and is entitled "An act to provide for a commission for building courthouses," and seems to have been an entirely independ-

Cuyahoga County.

ent act upon that subject. The commission was empowered by the terms of the act with the broadest discretion to determine all questions connected with the building of a courthouse, and was granted, in the language of the Supreme Court, "every phase of power and duty which is conferred upon the county commissioners and more." The act expressly provided: "said building commission shall, after adopting plans, specifications and estimates, invite bids and award contracts for said courthouse, and for furnishing heat, light, ventilating and for sewerage of the same, and determine all questions therewith, until said courthouse shall be completed and accepted by said building commission."

In view of this express power thus conferred upon the commission, and of the decision of the Supreme Court in the case of *Mackenzie* v. *State*, 76 Ohio St. 369 [81 N. E. Rep. 638], there is little doubt that the commission was well within the limitations of its authority in making this contract. But confusion has arisen from the fact that the codifying commission in codifying the statutes, embraced in the General Code, the statute creating the building commission with other sections of the statutes relating to the authority of county commissioners to erect county buildings, under chapter 1, title 10, relating to public buildings, covering sections from No. 2333 to 2366, inclusive, and from the further fact that the codifying commission divided Sec. 1 of the original act creating the building commission into several sections, and incorporated that part of the statute above quoted in Gen. Code 2338, making an addition thereto, so that the whole of Gen. Code 2338 now reads as follows:

"'After adopting plans, specifications and estimates, the commission shall invite bids and award contracts for the building and for furnishing, heating, lighting and ventilating it, and for the sewerage thereof. Until the building is completed and accepted, by the building commission, it may determine all questions connected therewith, and shall be governed by the provisions of this chapter relating to the erection of public buildings of the county."

Plaintiff now claims that because the original act creating

the building commission is now incorporated in the General
Code under one chapter relating to the construction of county
buildings, and especially because the original act appears to
have been amended, as shown by Gen. Code 2338, by adding
the words ''and shall be governed by the provisions of this
chapter relating to the erection of public buildings of the
county,'' the power of the building commission has thereby
been limited and restricted, and that it no longer has any
discretion with respect to letting contracts, but every con-
tract of whatever kind or nature must be advertised upon plans
and specifications for public letting and let to the lowest and
best bidder, and that if the decoration of the interior of the
courthouse proposed to be done by the commission, pursuant
to the contract made with Behrens, be of a character that can
not be submitted to competitive bidding, then the commission
and the county which it represents must forego that character
of work and must adopt a kind and class of work which can be
submitted to such bidding.

If this conclusion must necessarily follow from the addition
of the words to the statute above referred to, and now appear-
ing in Gen. Code 2338 for the first time, then, of course, there is
nothing for this court to do but to allow the prayer of the peti-
tion. We, however, do not think the conclusion contended for by
the plaintiff, from the change in the statute, necessarily follows.
The commission came into existence for the purpose of building
the courthouse. Preliminary to the appointment of four
members of the commission by the court of common pleas, the
commissioners of the county had, under the act, determined to
build a courthouse; had submitted to the electors of the county
the question of issuing bonds for that purpose, which had been
determined affirmatively by them, and then it was that the
building commission was organized, pursuant to the terms of
the statute, and the members appointed thereto by the court
were to serve until the courthouse, as contemplated in the act,
was completed. The commission, thus created, had but one
thing to do, to wit, to build and complete the courthouse. The
money was provided by the issuing of bonds for that purpose.

The members of the commission appointed by the court took an oath and gave bond for the faithful and honest discharge of their duty. In case one of them died before the courthouse was completed, the judge appointed his successor, and the commission was authorized to employ architects, superintendents and employes, and to adopt plans and specifications and estimates, and invite bids and award contracts for the courthouse, and for furnishing heat, light and ventilating the same, and for sewerage thereof, and were given authority to determine all questions connected with that work until the courthouse shall have been completed and accepted by the building commission. Thus the statute had one purpose, one object. The commission's service was continuous, beginning with its appointment and ending when the courthouse was completed. It seems clear, thus viewed, that the work of the commission in carrying out the objects and purposes for which it was appointed, and the building of the courthouse down to its completion, constituted within the meaning of Gen. Code 26 "a proceeding" and that any amendment of the statute made after that *proceeding* was instituted and carried forward almost to completion, can in no manner affect the powers given that commission in the original act. Suppose, indeed, that the codifying act by some error had repealed the entire act creating the commission and authorizing the erection of the courthouse, can it be said that if that had been done the commission would have been absolutely without power or authority to proceed at all with the completion of the building, and that it must remain in its unfinished and unusable state? It would seem as though the very purpose and object of Gen. Code 26 was to provide against just exactly such a contingency, such repeals, and to permit the authority originally granted to be exercised down to the completion of the work which this statute itself originally authorized, and which was begun and largely completed before this amendment was made.

The case of *Cincinnati* v. *Davis*, 58 Ohio St. 225 [50 N. E. Rep. 918], lends substantial support to this view. In that case the proper board of the city adopted a resolution to improve an alley of a certain width. Thereafter, and pending proceed-

State v. Cass.

ings to improve the alley, the statute was amended, conferring the authority to do this upon another board. The Supreme Court held that such amendment did not work a discontinuance of the proceeding pending before the original board to improve the alley and that the improvement should be prosecuted to completion by the board that adopted the resolution, under favor of Gen. Code 26 (R. S. 79).

In passing upon the case, Minshall, J., in the opinion says:

"The question then arises whether the assessments are void, because the ordinance to improve, adopted June 20, 1893, was adopted by the board of legislation, instead of by the board of administration; or, whether, by the amendment of March 30, 1893, the proceeding did not abate for the want of jurisdiction in the board, before which it was commenced, to make it? We think not. The act of March 30, 1893, contained no express provision making it apply to pending proceedings. Hence, as we think, this proceeding was not discontinued thereby, and the board of legislation was authorized under section 79, Revised Statutes, to proceed with and complete the improvement as it did. This section relates to no particular subject of legislation. It relates to the operation of statutes in general. The section reads as follows:

"'Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal, and where the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed; nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.'

"The section as first adopted did not contain the second clause as to repeals or amendments affecting the remedy; but. as there was a disposition to hold that it did not apply to such changes in the law, this clause was inserted, so that a repeal or amendment affecting the remedy should not apply to pending proceedings 'unless so expressed'; so that the amendment of March 30, 1893, does not apply to this case, if it is within the

provisions of the above section, whether it relates to the remedy or not, for the amendment contains no express provision to that effect. There seems to be the same reason for applying the provisions of this section to a pending proceeding for the improvement of a road or street that there is for its application to a pending proceeding in the nature of a suit, where the change in the law simply applies to the mode of procedure. In either case it must be assumed that the proceeding was commenced with reference to the provisions of the existing law; and it is neither wise nor just, as a general rule, to disappoint the parties in this regard by a change of the law, and, as must frequently happen, after a considerable amount of costs and expenses have been incurred.

"The section announces the permanent policy of the legislature as to the operation of its statutes; and, where there are, in its opinion, sufficient reasons for a departure from this policy in a particular instance, it has been declared that the departure shall be expressed in the amendatory statute. In so far as *Union Co. (Comrs.)* v. *Greene,* 40 Ohio St. 318, conflicts with this view, it is not approved. In *Raymond* v. *Cleveland,* 42 Ohio St. 522, a more correct view is taken of a clause similar to the provisions of section 79, Revised Statutes. There under the municipal code of 1869, and its amendments, proceedings had been commenced for the improvement of a street to be paid for by assessments on the property benefited. An assessment was made and set aside by the courts for irregularity. Subsequently, under provisions of the code in force when the proceeding was commenced, a reassessment was made; but the provisions of the code in regard to a reassessment had been previously repealed by the revision of 1878; and it was claimed for this reason that the reassessment was void. The revision, however, contained the following saving clause: 'No suit, prosecution or proceeding shall be in any manner affected by such change, but the same shall stand or proceed as if such change had not been made. It was argued that this provision related only to proceedings in the nature of actions and the like, and did not extend to the right to make a reassessment

authorized only by the law that had been repealed. But Okey, J., in delivering the opinion said: 'We are unwilling to place any such limitation upon the provision. It is remedial and no violence is done to the language by holding that it preserves the right to make this reassessment under the municipal code of 1869.' "

It would seem in view of the foregoing, that if it be conceded that the words added in Gen. Code 2338 be in fact an amendment of the statute of a character compelling a different construction than would be given it if the words were not added, then, nevertheless, the amendment would be without effect, because it relates to the work of building this courthouse, a proceeding, within the meaning of Gen. Code 26, long commenced and prosecuted before the amendment was made, and which was in fact made pending the proceeding relative to its completion.

The conclusion, therefore, necessarily follows that the amendment for which so much is claimed by the plaintiff here is not effectual to limit or restrict the powers of the commission granted by the original act so far as the proceeding relative to this courthouse is concerned, and that the commission has, with reference to this contract, the same power that it had before that amendment was made, and in view of the conclusions reached by the Supreme Court in *Mackenzie* v. *State,* *supra,* above referred to, we are of opinion that the commission had the power and authority to make this contract in the manner it did make it.

This conclusion necessarily disposes of the case, but we deem it proper to pass upon the other question here raised, namely, whether the interior decoration of this courthouse provided for in this contract is so essentially noncompetitive in character that the commission is not required to submit the work therefor to competitive bidding, assuming that otherwise the statute requires it to do so.

The contention of the plaintiff is that where a statute requires work to be submitted to competitive bidding and a contract to be made only with the lowest and best bidder, that

then no construction is permissible which undertakes to read into the statute any exception, and that in such a case the evident design and purpose of the lawmaking power is to restrict all work to that kind and character which can be in its nature the subject of competitive bidding. Upon the other hand, the contention is that the purpose of the law is to protect the public against unwise and injudicious contracts resulting from favoritism, dishonesty, and to secure for the public the construction of any public work upon the best terms and to the best advantage and at the lowest possible cost, and that the only sure way of securing this is by open public competition; but it is further contended that while this is true, it was no part of the purpose of the lawmaking power thereby to prevent the public from having those things which are essentially noncompetitive, where they subserve a useful if not necessary purpose which otherwise could not be obtained, and that it is not inimical at all to the purpose of these statutes to limit the public bidding required to those things about which there may be competition. Naturally the things which are noncompetitive in their nature are few as compared with the number of things that are competitive. So here. Here is a great public building, erected at great cost, intended not only for the present but many future generations; imposing in appearance, beautiful in design, monumental in character, whose walls it is proposed to decorate in harmony with the style and structure of the building itself, in a manner at once to add to its dignity and its beauty, exhibiting those elements of taste, feeling and harmony corresponding to the highest aesthetic taste of present day culture. This work, we find, is of that character that requires in him who undertakes to do it the idealism and imagination of an artist, the skill of the painter, the sentiment and feeling of the poet. That it may be done to harmonize with the building itself, with the mural paintings proposed to be placed upon its walls and in the manner herein described, requires the commission should select the man fitted to do the work and not to submit the work to any man who might bid upon it, whether he is fitted to do it or not. It seems to us

State v. Cass.

that it is not doing violence to the intention of the lawmakers nor the evils against which the statute is directed to construe it to be limited to work that is in its nature competitive and not otherwise.

This court in the case of *State* v. *McKenzie*, 29 O. C. C. 115 (9 N. S. 105), decided in 1907 this question, arriving at the same conclusion. In an able opinion by Henry, J., concurred in by Marvin and Burrows, JJ., it is said that "When the contemplated construction is essentially and absolutely non-competitive, because of its artistic nature, or is strictly monopolistic, because the function to be performed thereby is necessarily dependent upon a single means which is the subject of an exclusive patent, or franchise, or sole source of supply, then the principle of competition is, so far forth, inapplicable."

Numerous authorities from other states support this conclusion.

While the Supreme Court of our state has nowhere expressly passed upon the question, yet in the case of *Mackenzie* v. *State, supra*, Davis, J., in the opinion, speaking with reference to whether requiring public bidding had always worked out the best results or not, says:

"Every man has realized in his own experience, that the lowest price does not always secure satisfactory results and that some things which are most desired are not open to competition."

To us it is obvious that it is most desirable that the interior decoration of this magnificent structure should be in harmony with its original design, and that the plans and specifications and ideas with reference thereto of the architect employed by the commission, Mr. Schweinfurth, should be carried out, and if carried out, will add permanently to the dignity, beauty and character of the structure itself. This, we are convinced, can not be done by submitting the work to competitive bidding, but can only be done by the commission's selecting an artist whose skill, taste and aesthetic sense are of that high order that will enable him to carry out upon the walls of that building the scheme of decoration proposed.

Cuyahoga County.

It is claimed, however, that the Supreme Court of this state, has, in effect, determined this question otherwise in the case of *State* v. *Yeatman*, 22 Ohio St. 546. In that case the Supreme Court held that a contract made by the county commissioners for re-copying plats of the county for use in the auditor's office, the estimated expense of which exceeds $5,000, is void, as against the county, unless it be made with the lowest responsible bidder, in accordance with the provisions of the statute. The statute provided that in cases where the estimated expense exceeded $500, contracts should be awarded to the lowest responsible bidder, and Day, J., in passing upon the question, said:

"There is nothing in the character of the work to be contracted for that excludes it from the operation of this section of the statute. If the 'lowest responsible bidder' should not be possessed of the skill requisite to perform the work in a suitable and acceptable manner, he would be under the necessity, as in other cases, of employing those who have the capacity to do the work in a manner that will secure a faithful performance of the contract."

We do not think this is in conflict with the view we have taken of the case at bar. Obviously, the copying of plats required merely skill in copying, and it might be added, but ordinary skill at that, and it was with reference to work of that kind that the court was speaking; but in the case at bar the work involves not only skill, but it involves taste, feeling, harmony, sentiment, ideals; indeed the whole category involved in what is denominated aesthetics. We thus conclude that for this reason, also, the contention of the plaintiff in this case is not well taken, and that the commission had power and authority to make the contract which it is sought here to enjoin.

It is therefore ordered that the plaintiff's petition be and it is hereby dismissed at the costs of the plaintiff.

**Henry** and **Winch, JJ.,** concur.